JOURNAL ENTRY AND OPINION
Defendant-appellant, Claudell Isom, Jr., appeals the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding him guilty of breaking and entering in violation of R.C.2911.13(A). Appellant challenges the sufficiency of the evidence supporting his conviction and contends that his conviction was against the manifest weight of the evidence. Appellant also asserts that the trial court abused its discretion in denying his motion for a continuance of the trial and erred when it voir dired a thirteen-year-old witness in the presence of the jury. Finally, appellant contends that he was denied his constitutional rights to effective assistance of counsel and a fair trial by an impartial jury. Because the evidence was insufficient to support appellant's conviction, we reverse the judgment of the trial court and discharge the defendant.
On August 28, 2000, appellant was charged in the Cleveland Heights Municipal Court with breaking and entering in violation of R.C. 2911.13(A). Following a preliminary hearing on August 30, 2000, appellant was bound over to the Common Pleas Court of Cuyahoga County. On October 16, 2000, appellant was indicted by the Cuyahoga County Grand Jury on one count of breaking and entering, in violation of R.C. 2911.13(A). Appellant pled not guilty to the indictment.
A pretrial was held on October 25, 2000. On November 1, 2000, the trial court entered an order setting trial for November 14, 2000. On November 2, 2000, appellant filed a witness list, notice of alibi and a motion for a transcript of the preliminary hearing to be prepared at the State's expense. On November 3, 2000, the trial court granted appellant's motion.
On November 14, 2000, prior to commencing trial, the trial judge noted that defense counsel had made a motion to continue the trial because the transcript of the preliminary hearing had not yet been completed but she was denying counsel's motion.[1] Defense counsel made no objection to the ruling.
Three witnesses testified for the State at trial. Antoinette Chappell testified that she was in her kitchen preparing dinner at approximately 7:30 p.m. on August 22, 2000. Her three children were at home with her.
Chappell testified that when she glanced out the kitchen window, she saw a man in the detached two-car garage at the end of her driveway. According to Chappell, the right door of the garage was closed and a car was parked in front of it. The door on the left, however, was open and a man was standing in the middle of the garage. Chappell testified that the garage light was on and there was nothing to obstruct her view between the kitchen window and the garage, located approximately twenty feet from her house.
Chappell testified that the man in the garage had his back to her and she assumed it was her husband, Marvin. Chappell then heard a noise, looked out the window again, and saw that the man in the garage had thrown a car seat out of the garage. Chappell testified that she then called out Marvin? and the man in the garage halfway turned around so she could see his side. She then saw him grab her daughter's bike and begin riding it down the driveway toward the street. As Chappell dialed 911, two of her children ran out of the house and after the man, yelling at him.
Chappell testified that there is a side door to her house which opens onto the driveway. According to Chappell, the man rode the bike right past her as she was leaving her house through the side door to chase after her children. Chappell testified that the man was only five feet away from her when he rode past her.
In her 911 call, Chappell described the suspect as 5'6" or 5'7" tall, weighing one-hundred and sixty pounds and approximately thirty-five to forty years old. Chappell stated further that he was wearing a black teeshirt, blue jeans and a red, white and blue baseball cap.
According to Chappell, approximately forty minutes after her 911 call, a police officer picked her up at her house and drove her to a police cruiser parked several streets away in which a suspect was seated. Chappell informed the officers that the suspect in the cruiser was not the man who had stolen the bike from her garage and a police officer then took her back to her home, where the officer took a statement from her.
Chappell testified that four days later, as she and her husband were driving down a street approximately one mile from their house, she saw the man who had stolen the bike from her garage walking down the street. Chappell testified that she saw the man's face and recognized him. According to Chappell, he was still wearing the same clothes he had worn four days earlier.
Chappell testified that she called the police but was informed they could not help her. She finally flagged down a police cruiser and told the officer what had happened. The officer then arrested appellant.
Ashley Gauldan, Chappell's thirteen-year-old daughter, testified that she was in the living room on August 22, 2000 when her mother called out, Ashley, somebody['s] stealing your bike. Ashley ran outside and began chasing after the man on her bike, but stopped at the end of her driveway. Ashley testified that appellant, who was wearing blue jeans and a black sweatshirt, turned around and looked at her as he was riding down the street.
Dwayne Clayborn, a City of Cleveland Heights police officer, testified that he was in a police cruiser around the corner from Chappell's house on August 22, 2000 when he received a call regarding a bike theft. He immediately searched the area but did not find anyone. Clayborn testified that he subsequently stopped a suspect in the area. After Chappell was brought to the scene and informed him that the suspect was not the man who had stolen the bike from her garage, he released the suspect and took Chappell home, where he took a statement from her.
After the trial court denied defense counsel's Crim.R. 29 motion for acquittal, Nadine Coleman testified for the defense. Coleman testified that she had known appellant for several years. According to Coleman, appellant was with her at her house on August 22, 2000 from approximately 5:30 p.m. until 12:30 a.m. On cross-examination, Coleman testified that she had learned shortly after the alleged incident on August 22, 2000 that appellant was in jail but admitted that she had never called the police to tell them that he was with her that evening.
In light of Coleman's alibi testimony, defense counsel renewed his motion for acquittal, but the trial court denied the motion. The jury subsequently found appellant guilty of breaking and entering and the trial court sentenced appellant to twelve months in prison. Appellant timely appealed, raising seven assignments of error for our review.
In his first assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant was convicted of breaking and entering. R.C. 2911.13(A) defines the offense of breaking and entering:
 No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.
Appellant contends that the State failed to prove that he acted with force, stealth, or deception and, therefore, failed to prove all the elements of the crime. We agree.
Chappell testified that she did not know how appellant got into her garage. She testified that she did not know whether he simply walked up her driveway and into her garage and opined that he could have come from behind the garage. Chappell testified further that she could see both doors of the detached two-car garage from her kitchen window and the garage door that was visible from the street was closed but the other door was open. According to Chappell, appellant entered the garage through the door that was open.[2]
This was the only evidence offered by the State at trial regarding how appellant got into Chappell's garage. Even viewing this evidence in a light most favorable to the prosecution, the State presented no evidence that appellant entered the garage by force, stealth or deception.
First, there was no evidence of forcible entry. Indeed, Chappell testified that appellant entered the garage through the open garage door. The State erroneously asserts that it proved the element of force because while going through the garage to reach the bicycle, appellant threw a car seat out of the garage. The statute requires the use of force in the act of trespassing, however, (i.e., gaining entry to or remaining in the garage), not force in the act of theft.
Likewise, the State presented no evidence that appellant entered the garage by stealth or deception. Stealth has been defined as any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a [structure] of another without permission. State v. Ward (1993), 85 Ohio App.3d 537, 540, citing State v. Lane (1976),50 Ohio App.2d 41. Here, the State offered no evidence that appellant tried to avoid detection when he entered Chappell's garage; indeed, there was no evidence whatsoever regarding how he entered the garage. Furthermore, Chappell's testimony that appellant threw a car seat out of the garage belies any argument that he tried to avoid detection while he was in the garage.
Finally, there is nothing in the record to suggest that appellant entered the garage by use of any deception or trickery.
Because the State failed to prove that appellant entered Chappell's garage by force, stealth or deception, an essential element of the offense of breaking and entering, there was insufficient evidence to support appellant's conviction.
Accordingly, appellant's first assignment of error is sustained. The judgment of the trial court is reversed and appellant is discharged.
Our disposition of appellant's first assignment of error renders the remaining assignments of error moot and, therefore, we need not consider them. See App.R. 12(A)(c).
This cause is reversed for further proceedings consistent with the opinion herein; defendant discharged.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS; and PATRICIA A. BLACKMON, CONCURS IN JUDGMENT ONLY.
[1] Defense counsel did not make an oral motion for a continuance on the record nor file a written motion for a continuance.
[2] Contrary to the State's assertion, there was no testimony that appellant entered the garage through a side door which was not visible from the street.